UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————— )
                                            )
UNITED STATES OF AMERICA        )
                                            )
        v.                                  )        Criminal No. 17-10101-IT
                                            )
KEVIN AMELL,                         )
                                            )
        Defendant.                       )
                                            )
———————————————————— )

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully submits this memorandum in connection with the

sentencing of defendant Kevin Amell ("Amell").  For the reasons set forth below, the

government requests that the Court impose a term of incarceration of 27 months, which is below

the Sentencing Guidelines ("Guidelines") range of 41 to 51 months agreed upon by the parties in

the plea agreement, as well as the Guidelines range of 51 to 63 months calculated by the

Probation Office in the Pre-Sentence Investigation Report ("PSR")

I.   Background

As the Court is aware, Amell waived indictment on May 23, 2017, and pled guilty,

pursuant to a plea agreement, to a one count information charging him with securities fraud, in

violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5.  Amell's personal history

and the circumstances of his offense are recounted in detail in the PSR.  In brief, in or about

between December 2014 and February 2017, Amell, who worked as a Vice President and

Options Portfolio Manager at Eaton Vance, a publicly traded asset management firm, engaged in

a "front running" scheme in which he caused Eaton Vance mutual funds to sell options to

himself at prices below the price at which other market participants were willing to sell at that point in time, and then turned around and re-sold the options at the market price, pocketing the difference for himself.  As a result of this scheme, Amell earned more than $1.5 million in profits that should have been realized by Eaton Vance funds.  (As noted in the PSR, Amell's actual and potential profits together totaled $1,954,457, but Amell lost approximately $400,000 by not executing certain follow-on trades promptly.)

II.  Amell's Acceptance of Responsibility and Guilty Plea

Amell was approached by agents of the Federal Bureau of Investigation in February 2017, and immediately acknowledged his criminal culpability.  Amell subsequently agreed to meet with agents, and provided a full confession.  Amell expressed remorse for his actions from the outset, and did not seek to minimize his actions in any way.  Indeed, when first approached, he told the agents that he was the only person to blame for his actions.

Amell subsequently retained counsel, entered into an agreement to plead guilty to a one-count information, and did so on May 23, 2017.  Even before entering his plea, Amell provided the government with a check in the amount of $758,000 in partial payment of the restitution he expected to pay.  Amell also entered into an agreement with the government to put his home on the market, and to apply any proceeds from the sale (above his mortgage debt) toward restitution.

III. Sentencing Guidelines

"The guidelines, though advisory, constitute a starting point for the fashioning of a sentence."  United States v. Fernandez-Garay, 788 F.3d 1, 6 (1st Cir. 2015) (citation omitted).

As part of the plea agreement, the government and Amell agreed that his total offense level was 22, comprised of a base offense level of 7, a 16-point enhancement for a loss of more

than $1.5 million and less than $3.5 million, a 2-point enhancement for abuse of a position of trust (based on the defendant's role at Eaton Vance and the manner in which he used his position to commit and conceal the crime), and a 3-point deduction for timely acceptance of responsibility.  See Dkt. 2, ¶ 3.  Based on Amell's lack of any prior criminal history, the resulting Sentencing Guidelines range would be 41 to 51 months.

The Probation Office, in preparing the PSR, calculated the total Guidelines level as 24, based on the application of a 4-point enhancement for a violation of securities law while the defendant was associated with an investment advisor.  See PSR ¶ 22.  Where that enhancement applies, the enhancement for abuse of a position of trust does not apply.  See USSG § 2B1.1, app. note 15(C).

Upon review, the government respectfully submits that the Probation Office's calculation is correct, and that the government's calculation, as agreed upon by the parties and set forth in the plea agreement, is not.  Accordingly, the government submits that the total offense level is properly calculated at 24, after acceptance of responsibility.  Amell's Sentencing Guidelines range is therefore 51 to 63 months.

IV. Section 3553(a) Factors

A.  The Nature and Circumstances of the Offense

The defendant's crime is serious.  The stock market functions properly only when participants follow the various rules established to promote efficiency, transparency, and fairness.  When market participants break those rules, the market's integrity is undermined.

That is particularly the case here, where the defendant was a well-compensated employee of a large asset management firm, entrusted with fiduciary responsibility to help manage the

3

savings of literally millions of retirees and other individuals.  The defendant's crime was neither momentary nor victimless.  It extended over more than two years, comprised of a series of decisions by Amell to betray the trust of his clients and his employer over and over again.  And while Eaton Vance ultimately absorbed the loss and will make its clients whole, those investors would have been harmed unknowingly had Amell's crimes gone undiscovered.  For his part, Amell—entrusted with their money, positioned to have unusual insight into the mechanics of the market, and armed with knowledge of how to commit his crime undetected and to evade his employer's internal controls—was able to line his own pockets while defrauding them.

Such cheating can have serious financial consequences—and indeed, the consequences here were considerable.  More broadly, betrayals such as this one corrode the operation of the financial markets, sap confidence in the system and, left unchecked and unpunished, could cause investors to pull out of the markets altogether.

Amell's actions are all the more serious because of his position as an executive and trader at a major asset management firm.  Individuals in such positions have a heightened responsibility—for which they are well compensated—not to use their positions to benefit themselves at the expense of their employers and clients.  Amell, by virtue of his training and experience, was intimately familiar with these obligations, and yet chose to betray them.  Such choices, particularly by individuals with heightened moral and legal duties, must have consequences.

B.  <u>The History and Characteristics of the Defendant</u>

The defendant's personal history is set forth in the PSR.  Several items bear particular note.

4

<u>First</u>, the defendant's involvement in the instant crime was an aberration in an otherwise crime-free life in which he rose from a hard-scrabble background to graduate from college and graduate school.

<u>Second</u>, Amell's crime appears to have been, at least in part, the result of poor decision-making in the wake of a challenging personal circumstance and the pressure caused by a difficult divorce.

<u>Third</u>, Amell is the father of two young children, and is an important financial contributor to their well-being.  Nevertheless, Amell also committed his crime knowingly, intentionally and voluntarily after those children were born, knowing full well the potential consequences of his actions on their lives.  While the collateral consequences of his potential incarceration on his children are real, Amell should not now be permitted to use those consequences to insulate himself from the consequences of his deliberate decisions.

<u>Fourth</u>, Amell is, as noted, remorseful about his conduct, and has been from the moment he was approached by federal agents.

<u>Fifth</u>, Amell's work since May 2017 with children suffering from behavioral, emotional or substance abuse issues is significant and commendable.

C.   <u>The Need for Just Punishment, Adequate Deterrence</u>
<u>And to Protect the Public from Further Crimes of the Defendant</u>

Amell has suffered significant financial and other consequences since his crime was discovered.  He resigned from Eaton Vance and is unlikely to work in financial services again, having left that profession in disgrace.  As a consequence, he is unlikely ever to earn more than a fraction of his former income.  He will lose his home and his savings.

5

In light of these consequences, the defendant is not likely ever again to be in a position to commit the same crime.  Nor, as the foregoing suggests, is he likely to do so.  There is, accordingly, little need for a term of incarceration either to promote the interests of specific deterrence, or to protect the public from further crimes of the defendant.

That said, the government respectfully submits that the goals of just punishment and general deterrence counsel strongly in favor of a meaningful term of incarceration that serves as a warning to others, who may be similarly situated, that financial industry insiders who improperly abuse their positions to benefit themselves at the expense of their employers and clients will face serious punishment if they are caught.  Only a meaningful term of incarceration will send this message, and provide just punishment for the serious crime Amell committed.

V.  Conclusion

Front running by financial industry insiders is difficult to detect.  If it is to be stopped, it will be, in part, because of cases like this one, and because wrongdoers and would-be wrongdoers learn that when their criminal activity is uncovered, the punishment will be severe. There are, accordingly, important policy implications to Amell's sentence.

At the same time, Amell's personal characteristics, his remorse, and the repercussions his actions have already had on his life and that of his family, counsel in favor of leniency.  For all these reasons, the government submits that a sentence of 27 months' incarceration, together with

full restitution and forfeiture, is sufficient, but not greater than necessary, to provide just

punishment and adequate deterrence, and otherwise to achieve the goals of sentencing.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By: */s/ Stephen E. Frank*
STEPHEN E. FRANK
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document file through the ECF system will be sent electronically
to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: August 9, 2017

*/s/ Stephen E. Frank*
Stephen E. Frank

7